OLIPHANT v. ROGERS et al.

95 P. 2d 887.

No. 28358.   Sept. 12, 1939.

Rehearing Denied   Nov. 21, 1939.

Thos. J. Horsley, Hicks B. Epton, S. W. Biggers, and Geo. W. Oliphant, for plaintiff in error.

Orr & Woodford, for defendants in error.

OSBORN, J.   This action was instituted in the district court of Hughes county on October 18, 1935, by A. Oliphant, hereinafter referred to as plaintiff, against W. G. Rogers, B. H. Rogers, and Rogers Oil & Gas Company, hereinafter referred to as defendants, whereby plaintiff sought to establish a constructive trust in 40 acres of land located in Hughes county, and for an accounting. Issues were joined and the cause proceeded to trial before the court. From a judgment in favor of defendants, plaintiff has appealed.

The principal allegations of plaintiff's petition are as follows:

"That on or about the 1st day of May, 1931, the plaintiff and W. G. Rogers and B. H. Rogers, entered into a verbal contract by the terms of which it was mutually agreed that they jointly would purchase and acquire title to the following described land situate in the County of Hughes, State of Oklahoma, to wit:

"The Southwest quarter of the South-

west quarter of Section One (1) in Township Nine (9) North, and Range Eight (8) East: that the record title to said lands should be taken in the name of B. H. Rogers who would hold the same in trust, an undivided one-half interest therein for this plaintiff and an undivided one-half interest for the said W. G. Rogers and B. H. Rogers, jointly, (plaintiff would) pay one-half of all costs and expenses incurred in so acquiring said title to said land; that in the event the said W. G. Rogers and B. H. Rogers should expend and pay more than one-half of said costs and expenses, the plaintiff should pay to and reimburse them for all sums so expended by them in excess of one-half of the total cost of said land which said excess sum of money said plaintiff at the time of making said contract absolutely and unconditionally agreed and bound himself to pay as aforesaid.

"That thereafter the plaintiff expended the sum of Fifty ($50.00) Dollars, in cash and obtained on May 29th, 1931, a certain deed, conveying an interest in said land the same being the deed of Amos Yahola and Bessie Yahola, and that the said B. H. Rogers and W. G. Rogers expended some money in these and subsequent purchases of other interests in said land, the exact amount of which is to the plaintiff at this time unknown.

"Plaintiff further alleges that thereafter, by mesne conveyances and a purchase at a partition sale, full title was acquired to the said land, that the title to said property, by agreement of all of said parties, was placed in B. H. Rogers, for the use and benefit of the said B. H. Rogers and W. G. Rogers and this plaintiff in the proportions aforesaid:

"Plaintiff further alleges that said property adjacent to a large tract of land owned by this plaintiff, and that this plaintiff has the actual possession of said property and used same in connection with his other lands in that community, and that in the year 1933, at the instance and suit of said defendants, W. G. Rogers and B. H. Rogers, a receiver was appointed for the other lands of this plaintiff, and that the said within described property continued to remain unoccupied land, but was used in connection with the other lands of this plaintiff then under receivership, said receivership having since terminated."

Plaintiff further alleged that defendants did not deny the right of plaintiff to a one-half interest in the lands until the year 1934, at which time they executed an oil and gas lease to the Rogers Oil & Gas Company, and were attempting to develop the same for oil and gas. Plaintiff further alleged that he was ready, willing, and able to pay any amount adjudged to be due from him as the purchase price of said land. Plaintiff prayed for an accounting and that he be decreed to be the owner and entitled to possession of an undivided one-half interest in the lands.

The record discloses that most of plaintiff's business was handled by his sons Ralph Oliphant and Zan Oliphant; that Ralph Oliphant and defendants W. G. Rogers and B. H. Rogers were brothers-in-law; the three of them having married sisters; that for a time the relationship between the defendants and Ralph Oliphant was intimate and friendly and that said defendants had from time to time advanced to plaintiff substantial sums of money for which they held notes and mortgages upon his property. Prior to the institution of this suit some difficulty had arisen between the parties.

The 40 acres of land involved herein was the allotment of one Jim McGirt, a deceased full-blood Creek Indian, who died in 1910, leaving a wife and other heirs. In April, 1931, the property became alienable. Plaintiff owned a large tract of land adjacent to the property herein involved, including the remainder of the quarter section. It was plaintiff's testimony that he was anxious to procure the land, but was without the necessary funds; that he entered into an oral arrangement with defendants whereby they were to furnish the funds for the purchase of the property, plaintiff was to locate the Indian heirs and procure the necessary conveyances from them and was to have a one-half interest in the property, and defendants were to have the other one-half. Plaintiff's sons located some of the Indian heirs, took them to the law offices of Orr & Woodford at Holdenville, which attor-

neys were authorized by defendants to handle the details of the transaction. The deeds were executed and in the case of the full-blood heirs the deeds were approved by the county court. One of the heirs was a minor and it became necessary to file a suit in partition to procure the interest of the minor. The land was partitioned and bid in at the partition sale in the name of B. H. Rogers. The full consideration was paid by defendants. There appears to be no contention that plaintiff had paid any portion of the purchase price, or had tendered payment thereof until the institution of this action. Ralph Oliphant testified that B. H. Rogers at the outset had told him, "Whenever you pay me, I will give you a deed to your half." There was some testimony in behalf of plaintiff that he had paid some expense items incurred in procuring the deeds.

The land became valuable for oil and gas purposes in July, 1934. In November, 1935, defendant Rogers Oil & Gas Company commenced drilling operations and subsequently four wells were drilled to production. At the time of trial, all four wells were producing oil in paying quantities.

The evidence was in sharp conflict on the material points. Plaintiff and his witnesses testified positively as to the oral agreement hereinabove referred to, while defendants and their witnesses testified as positively that no such agreement was ever made. They testified also that the services rendered by plaintiff's sons in procuring the conveyances were accommodation services by way of repayment for courtesies extended to plaintiff by the defendants.

It will not be necessary to outline all of the evidence adduced at the trial. The above statement of facts is sufficient to outline the issues of law.

It is plaintiff's position that the evidence is sufficient to establish a constructive trust or a trust ex maleficio, while defendants contend that the finding of the trial court that there was no such relationship established is amply sup-ported by the evidence, and that this action is, in fact, an action for the enforcement of an oral contract to convey real property, and is therefore within the statute of frauds, void and unenforceable.

It is conceded that a constructive trust may be established by parol evidence, but that the law requires that the proof be of the most satisfactory kind. The evidence must be clear, unequivocal, and decisive. See Hayden v. Dannenberg, 42 Okla. 776, 143 P. 859, Ann. Cas. 1916D, 1191; Royer v. Dobbins, 111 Okla. 156, 239 P. 157; McGann v. McGann, 169 Okla. 515, 37 P. 2d 939; Coryell v. Marrs, 180 Okla. 394, 70 P. 2d 478.

In the case of Noble v. Bodovitz, 175 Okla. 432, 52 P. 2d 1046, it was pointed out that:

"In cases of equitable cognizance, the judgment of the appellate court should not lightly displace the judgment of the trial court, which had the advantage of observing the witnesses upon the stand."

In the case of Reed v. Peck & Hills Furn. Co., 93 Okla. 212, 220 P. 900, the issue before the court was practically identical to the issue involved herein. Therein it was held:

"In order that the doctrine of trusts ex maleficio with respect to land may be enforced under any cicumstances there must be something more than a mere verbal promise, however unequivocal; there must be an element of positive fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated."

In the case of Hazlett v. Kearse, 171 Okla. 82, 42 P. 2d 124, it is said:

"The trial court was correct in holding that the evidence did not establish a resulting trust. The evidence was conflicting and not conclusive. The plaintiff conveyed by general warranty deed, without reservation or limitation on the title. The trust agreement was oral. Had the agreement to hold the land in trust for plaintiff, and to reconvey, been in writing, it would have established an express trust. The oral agreement to that effect is not enforceable as an express trust. Sections 11803, 11808, 11820, 11821, O. S. 1931;

Reed v. Peck & Hills Furn. Co., 94 Okla. 212, 220 P. 900; Bryant v. Mahan, 130 Okla. 67, 264 P. 811."

The finding of the trial court was general and includes such special findings as are necessary to sustain the judgment. This includes a finding that the services rendered in procuring conveyances for the grantees and the expenses paid by plaintiff constituted no part of the purchase price of the land, which finding is not contrary to the clear weight of the evidence. It therefore follows that there was no fraud in the procurement of title to the land and that plaintiff failed to establish a constructive trust or a trust ex maleficio.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.